UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES TALBERT, | : |
| Plaintiff | : CIVIL ACTION NO. 3:22-0112 |
| v. | : (JUDGE MANNION) |
| LT. BEAVER, *et al.*, | : |
| Defendants | : |

**MEMORANDUM**

**I. BACKGROUND**

On January 21, 2022, Plaintiff, Charles Talbert, an inmate formerly confined[1] at the State Correctional Institution, Camp Hill ("SCI-Camp Hill"), Pennsylvania, filed the above caption civil rights action, pursuant to 42 U.S.C. §1983. (Doc. 1). The named Defendants are the following SCI-Camp Hill employees: Lt. Beaver, Sgt. Johnson and Correctional Officers, Fontaine, Doyle, Stanbaugh, Sandaval, and Williamson. Id.

Plaintiff complains of an incident which occurred on December 30, 2021, in which Plaintiff claims that his "mental health was triggered, causing him to feel suicidal and helpless" after "watch[ing] Johnson allow Fontaine to

---

[1] Plaintiff is currently confined in the State Correctional Institution, Coal Township, Pennsylvania.

throw several articles of property away and to confiscate Plaintiff's Bible." Id. Plaintiff claims that "on his person, [he] possessed over 25 Tylenol and Ibuprofen pills," and "threatened to swallow all of his medication and commit suicide," should Defendant Johnson "continue to allow Fontaine [to] destroy and throw away his property." Id. He states that "instead of seeking a mental health provider or try to ease Plaintiff's mental health crisis, Johnson had carelessly and recklessly and maliciously threatened to come into Plaintiff's cell and assault him with other officers." Id. Defendants then "gathered outside of Plaintiff's cell, while another officer grabbed hold of a shield." Id. Plaintiff, "having a panic attack and in fear of his life, grabbed his mattress for protection." Id. Plaintiff states that "all said Defendants came rushing into Plaintiff's cell and despite having knowledge of his asthma and high blood pressure, these Defendants had used large amounts of pepper spray on Plaintiff, even while he was on the ground, laying on his stomach, defenseless." Id. Plaintiff claims that he was "sprayed in his eyes, nose, ears and face, causing him to hyperventilate, go temporary blind and his skin to extremely burn and cause excruciating pain and suffering." Id. He alleges that Defendants "participated in punching Plaintiff in the back of his head, while squeezing metal handcuffs around the bone of his lower wrists, to which had then pulled him up from the ground by the tether connected to the

handcuffs in an awkward position to which caused the Plaintiff nerve, bone and muscle injury to a preexisting right thumb, hand and wrist injury from a prior assault." Id.

Plaintiff filed the instant action in which he seeks compensatory and punitive damages for Defendants' alleged use of force which Plaintiff claims was "premeditated and done in a malicious, racist, sadistic, arbitrary, cruel and capricious manner, with intent to savagely cause harm." Id.

Presently pending are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court will grant Defendants' Rule 56 motion and deny Talbert's motion.

## II. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made,

the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Thus, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual dispute exists. Anderson, 477 U.S. at 248. Rather, the nonmovant "must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Courts may resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008); 10A Charles Alan Wright, et al., Federal Practice and Procedure §2720 (3d ed. 2015). When doing so, the court is

bound to view the evidence in the light most favorable to the nonmovant with respect to each motion. See Lawrence, 527 F.3d at 310 (citation omitted).

### III. STATEMENT OF MATERIAL FACTS

Under the Prison Litigation Reform Act ("PLRA"), prisoner plaintiffs must exhaust all available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 304 (3d Cir. 2020). The statute requires "proper exhaustion," meaning the prisoner must complete the administrative review process in accordance with the procedural rules set by the prison. Downey, 968 F.3d at 305 (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).

Under DC-ADM 804, a prisoner must first submit a timely written grievance for review by the Superintendent or regional grievance coordinator within fifteen days from the date of the incident. (Doc. 60-3 at 29, DC-ADM 804). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." Id. If the inmate wishes to receive compensation or "other legal relief normally available from a court" as a remedy for his

grievance, he "must request the specific relief sought in his/her initial grievance." Id. A response should be received within ten business days. Id. Next, the prisoner must submit a timely written appeal to an intermediate review level within ten working days. Id. Again, a response should be received within ten working days. Id. Finally, the inmate must submit a timely appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days, and the inmate should receive a final determination within thirty days. To fully exhaust an issue or incident in accordance with DC-ADM 804, "[a]n inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process." Id.

On December 27, 2021, Plaintiff filed Grievance Number 961802, stating that "Officer Fontaine had threatened to have [his] breakfast and lunch meals contaminated with semen, urine, and feces because of [his] PREA action against him." (Doc. 44 at 6). Also on December 27, 2021, Plaintiff filed Grievance Number 961809, stating that "Officer Fontaine (an officer with a PREA against him) came to [Plaintiff's] cell with another officer to give [Plaintiff, his] lunch meal" and "upon observing [his] tray of food, [Plaintiff] noticed over 20 staples (metal) inside of [his] potato salad." (Doc. 44 at 11).

On January 11, 2022, Plaintiff filed Grievance Number 964675, claiming the following:

> On December 30, 2021, after seeing officer Fontaine throw some of my property away, while on E-D, symptoms of my mental health became triggered, and I became suicidal. I informed Sgt. Johnson if he continued to let C/O Fontaine throw my property away, that I would take several pills that I had on my possession (i.e. Motrin, Tylenol). Instead of telling Fontaine to stop throwing away my property, he got a team together. Prior to entered my cell, Sgt. Johnson stated that him and his boys were going to "Fuck me up." At this point, I became afraid and grabbed by mattress to protect myself from the assault. Sgt. Johnson and several officers then came into my cell with a shield and pepper spray. As I went to block the assault, I yelled out that I have asthma and high blood pressure. Without care, I was then sprayed in the face, mouth, nose, and ears even after laying down on the ground while roughly being handcuffed behind my back. While handcuffed and defenseless, I began to get punched in the back of my head several times. The handcuffs were squeezed around my bones of my wrists so tight that lacerations still exist. Also, with pressure being so tight around my wrists, my right thumb down to my arm became numb and nerves and bond damage has occurred. I was unable to breath from the spray for over an hour as well as unable to see, in violation of DOC Policy. The force used was excessive and malicious.

(Doc. 60-2 at 5-7).

On January 13, 2022, Plaintiff executed the complaint in the above captioned action, where it was received and filed in this Court on January 21, 2022. (Doc. 1).

On January 24, 2022, an Initial Level Extension was issued, notifying Plaintiff that an extension of ten additional working days was necessary in

order to appropriately investigate and respond to Grievance Numbers 961802 and 961809. (Doc. 44 at 7, 12).

On January 25, 2022, an Initial Level Extension was issued, notifying Plaintiff that an extension of time was necessary in order to appropriately investigate and respond to Grievance Number 964675. (Doc. 44 at 19).

## II. Discussion

Under the PLRA, a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. See 42 U.S.C. §1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997(e). The exhaustion requirement is mandatory. Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative

procedures"). Moreover, while Plaintiff was released from prison after filing the above-captioned case (Doc. No. 10), he is still bound by the exhaustion requirement because he has raised claims concerning events that occurred prior to his release. See Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to §1997e's exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. Id. Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See e.g., Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's

procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. Warman, 49 F. App'x at 368. Thus, an

inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.' ") (citations omitted).

The Supreme Court has considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. Id. at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." Rinaldi v. United States, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." Id. at 269.

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence... that would entitle [them] to a directed verdict if not controverted at trial'." Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Id. (quoting Nat'l State Bank

v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

The Plaintiff moves for summary judgment based on the Third Circuit's holding in Robinson v. Superintendent, 831 F.3d 148 (3d Cir. 2016). (Doc. 40 at 11). In Robinson, the Third Court joined five of its sister courts in finding that a prison's failure to timely respond to an inmate's properly filed grievance renders its remedies "unavailable" under the PLRA.

Here, Plaintiff argues that he filed Grievance Numbers 961801 and 961809 on December 27, 2021 and "a response was due by January 26, 2022 with a 10 day extension making it February 9, 2022" and "no response was given." (Doc. 40 at 11). He also claims that on January 11, 2022, he submitted Grievance Number 964675 and "a response was due by March 29, 2022, with a 10 day extension making it April 12, 2022" and "no response was given." Id. Thus, Plaintiff concludes that the lack of response by SCI-Camp Hill officials renders Plaintiff's remedies unavailable, satisfying the exhaustion requirement. Id.

While Plaintiff has cited the proper holding for Robinson, as it applies to the filing of his grievances to which no response was received, Plaintiff fails to recognize that his complaint was filed on January 13, 2022, well before any response due date ran for any of his grievances. Thus, any

- 13 -

administrative remedy, response, or appeal filed after January 13, 2022 does not remedy Plaintiff's failure to exhaust **before** bringing a civil rights action concerning prison conditions in federal court. See 42 U.S.C. §1997e(a); Ross v. Blake, 578 U.S. 632 (2016). (emphasis added). Here, Plaintiff began the administrative process on December 27, 2021, with Grievance Numbers 961801 and 961809 and then filed Grievance No. 964675 on January 11, 2022, all prior to filing the instant action. Plaintiff, however, failed to wait for the response time to run, and, instead, filed the instant action on January 13, 2022, prior to fully exhausting any administrative remedy regarding his claims. Thus, Plaintiff's own exhibits demonstrate that he failed to exhaust administrative remedies prior to bringing his federal action. See Ahmed v. Dragovich, 297 F.3d 201, 209 n.9 (3d Cir. 2002) (" 'Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to suit.' " (quoting Perez v. Wis. Dep't of Corr., 182 F.3d 532, 534-35 (7th Cir. 1999)) (emphasis in original)); Garrett v. Wexford Health, 938 F.3d 69, 85-86 (3d Cir. 2019) (observing that substantial compliance with the PLRA's exhaustion requirement does not encompass "the filing of a suit before administrative exhaustion ..." (citing Ahmed, 297 F.3d at 209)). Consequently, the Court finds that summary judgment is to be entered against Plaintiff and in favor

Defendants.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' cross motion for summary judgment, based on Plaintiff's failure to exhaust administrative remedies prior to filing his federal action, and deny Plaintiff's motion for summary judgment

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 21, 2023**
22-0112-02